ILLINOIS CENTRAL R. CO. *v.* MIDDLETON, SHERIFF AND
TAX COLLECTOR.

[68 South. 146.]

1. SCHOOLS AND SCHOOL DISTRICTS.  *Taxation.  Time of assessment.
   Statutes.  Executive construction.  Pleading.  Railroad property.
   Collection of taxes.*
   Under Code 1906, section 307, providing that boards of supervisors
   "shall have power to levy such taxes as may be necessary to
   meet the demands of their respective counties, upon such per-
   sons and property as are subject to state taxes for the time be-
   ing" and under sections 4255 and 4257, providing that all taxes
   assessed shall be a lien upon the property from the first day
   of February of the year in which the assessment shall be made,
   and that all taxable property brought into the state or ac-
   quired or held by any person, before the first day of February,
   shall be assessed and taxes paid thereon, the property of a rail-
   road situated in two school districts of a county, was taxable
   for school purposes, although such school districts were created
   after the first day of February of the year in which this tax was
   levied, since the property was "subject to state taxes for the
   time being."

2. SAME.
   Since both the execution and the administrative departments of
   the state have heretofore acted upon the construction of these
   statutes (sections 4255 and 4277), which permits taxes to be col-
   lected by new counties and for road and school districts dur-
   ing the year of their creation, although they were created after
   the first of February, such construction should not be departed
   from unless manifestly incorrect.

3. SAME.
   One of the cardinal rules of construing statutes is that, if rea-
   sonably possible, they should be so construed as not to be absurd.

4. SAME.
   Such a construction was given the statutes since Acts 1912, chapter
   255, section 3, provides that the tax for consolidated school dis-
   tricts shall be levied in the same manner as provided for sepa-
   rate school districts, while Laws 1910, chapter, 217, provides for
   the levy of taxes for separate school districts in such a manner
   that it cannot be doubted that the intention of the legislature
   was that the taxes should be levied and collected regardless of
   the date upon which the district was created.

5. Pleading. *Construction.*
   A pleading must be construed most strongly against the pleader.

6. Taxation. *Restraining collection. Railroad property.*
   In an action by a railroad to enjoin the collection of a tax upon its property for the support of school districts levied under Code 1906, sections 4255-4257, providing for such assessments, where the bill did not allege when the assessment was made, nor that it was impracticable to have been made before June 1st, it was necessary to presume that the railroad commission had made the assessment previously to June 1st, as Code 1906, section 4387, required, which was previous to the creation of the consolidated school district for whose support the tax was levied, so that it was impossible for the commission to indicate on the assessment rolls what portion of the railroad's property was situated within the district and was subject to taxation for their support.

7. School Districts. *Taxation. Assessment. Collection of Taxes.*
   A railroad cannot enjoin the collection of a tax for the support of county school districts which were created after February first, the date of the annual assessment of property, since it is the duty of the tax collector to collect all taxes levied on railroad property for district purposes "basing the same on the assessment previously made" that is, the assessment made next preceding the creation of the district, under Laws of 1910, chapter 217, providing for the assessment of property in rural separate school districts.

Appeal from the chancery court of Hinds county.
Hon. O. B. Taylor, Judge.

Suit by Illinois Central Railroad Company against E. S. Middleton, Sheriff and Tax Collector. From a judgment dismissing the cause on demurrer, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

In this case we have two contentions: First, these school districts were created after the first of February, and because of this the property included therein was not liable for any tax for the current year, 1914; sec-

ond, if we are wrong as to this, the exclusive assessor for railroad property is the Railroad Commission, and the Railroad Commission having refused to assess this property for the current year, no assessment could be made by any other authority and the board of supervisors could not impose any tax on the property until the assessment was properly made by the Commission.

Section 4257 of the Code of 1906, provides that: "All taxable property brought into the state or acquired or held by any person before the first day of February shall be assessed, and taxes thereon paid for the current year." This section seems to make it plain that property is not liable for current taxes unless liable on the first day of February, and in this case this property was not so liable, because there was no district.

Section 4255 provides that: "Taxes shall be a lien upon and bind the property from the first day of February of the year in which the assessment shall be made."

These two sections fix first: The date when the liability attaches, and, second, the date from which the lien on the property commences, which is the first of February. Section 4280 provides that land shall be assessed between the first day of February and the first day of July, and every two years thereafter.

Under the above sections it seems plain that before any property can be assessed for taxation for any current year, the property must have been liable to the tax before the first day of February of that year. This is the rule fixed by the statute and is the construction of the statute that this court placed on it in the case of *Gulfport* v. *Todd,* 92 Miss. 428.

In view of the Todd case it would seem that we need not cite any additional authority to show that territory brought into a municipality after the time fixed for the lien of taxes cannot be assessed for the current year, but since such holding seems universal, we call the

court's attention to a few authorities: See 28 Cyc., p. 1678; also *Austin* v. *Butler,* 40 S. W. 340; *Latonie* v. *Myer,* 86 S. W. 686.

The chancellor followed the case of *Atchison, Topeka & Santa Fe Ry.* v. *School District* 99, 75 Kan. 843, 89 Pac. 1015. In Kansas the law seems to require personal property to be listed for taxation on the first of March. In that case the school district was not organized until June 23rd. The tax was levied upon property embraced in the territory brought into the separate school district after the date fixed by statute. The Kansas court, without citing a single authority, said: "There is no claim that on March first the property taxed was not within the territory which now comprises the school district, or that plaintiff's property was taxed in any other district or subjected to double taxation. There is, therefore, nothing equitable in plaintiff's claim. It rests upon a technical construction of the law of taxation, and not upon any prejudice to plaintiff's rights. The levy was made within proper time, by a district duly organized, and upon property which on the first day of March was within the territory comprising the school district when the levy was made, and none of the property paid school taxes for that year in any other district. This, we think, is sufficient to render the tax legal and valid."

There is hardly a case tried in this court where there is not some conflict of authority. The chancellor followed, not the decision of our own court supported by almost unanimous analogous authority, but followed the Kansas court. Judge CALHOUN, in deciding the Todd case, said: "We do not think any authority can be found which, in a precisely similar case, holds otherwise. If so, we decline to follow it." Our court fixed the rule for this state, and did not leave it open for the Kansas decision to outline a different rule.

The attorney-general gives it as his opinion to the Railroad Commission that this tax could not be collected

for this year, and that body has not assessed the property of the Railroad Company for this tax for the current year.

In section 4384 of the Code of 1906, the Railroad Commissioners are made the state railroad assessors, and in the case of *Y. & M. V. R. R.* v. *City of Vicksburg*, 49 So. 185, it was held that no authority, save the Railroad Commission, could make any assessment of railroad property. It is charged in this bill, and the demurrer admits, that this assessment was not made by the Railroad Commission, and they declined to do it.

Before any city, town, county, separate school district, or other subordinate agency of the government can collect any taxes from the Railroad Company, the assessment must be made by the Railroad Commission, and under section 4387, it must make it out for each county, town, village, separate school district, etc. The assessment roll of the property within the town, village or separate school district so prepared by them serves as the only warrant for the tax collector to collect taxes. This was not done and for the many other reasons here argued we contend that the decree of the chancellor is bound to be reversed.

*Watkins & Watkins,* for appellee.

"There is presented for decision in this case the legal question as to whether the board of supervisors can make a valid assessment of taxes—a special levy upon the property embraced within the consolidated school district, said district having been formed and established after February first and prior to the date fixed for the board of supervisors to make the assessment. Complainant contends that it cannot and in support of this contention relies upon the case of *City of Gulfport* v. *Todd*, 92 Miss. 428. In that case it was specifically decided that inasmuch as the territory added to the city of Gulfport was taken within the corporation after Feb-

ruary first that the municipal tax could not be legally collected. If the creation of the consolidated school district is the same thing as the addition of territory to a municipal corporation, then this case must be decided for complainant.

"We do not believe that it is. In this case, as stated in the opinion of the court, there is no question of governmental agency. A municipal corporation is simply a creature of the legislature, a corporation organized entirely separate and set apart with the power of doing only such things as have been specifically granted to it' by the law-making department of government. The board of supervisors are a part of the state government itself, and when it acts it does so as a part of the organized government. When the municipality goes out and brings into its limits new territory, it places a burden in the way of taxes, upon property which on the day fixed by law was wholly outside its jurisdiction, but when a consolidated school district is organized it is but the state providing for itself another medium through which to exercise its desires for its citizens. It does not bring an additional burden upon property which had been added to a division of the Government after the date fixed by statute, but only places a burden upon property which was located in the district at the time fixed by law. We think the decision in the city of Gulfport case correct, but that there is a difference between a municipality bringing into its corporation new territory; and the organization of an entirely new and separate part of the state government in a legal way by the constituted authorities.'

"We think the case of *Atchison, Topeka and Santa Fe Railway Company* v. *School District No. 99,* 75 Kan. 843, is strikingly analogous to the situation in this case. In Kansas the law required personal property to be listed for taxation on the first day of March. In Mississippi, February first is the day. There the school

district was not organized until June 23rd, when the tax was levied. In both cases the tax was levied upon property embraced in territory that had not been formed into a separate district until after date fixed by statute. The court says: 'There is no claim that on March 1st the property taxed was not within the territory which now comprises the school district, or that plaintiff's property was taxed in any other district or subjected to double taxation. There is, therefore, nothing equitable in plaintiff's claim. It rests upon a technical construction of the law of taxation, and not upon any prejudice to plaintiff's rights. . . . The levy was made within proper time, by a district duly organized, and upon property which on the first day of March was within the territory comprising the school district when the levy was made, and none of the property paid school taxes for that year in any other district. This, we think, is sufficient to render the tax legal and valid.' ' '

By reference to section 3 of chapter 255 of the Acts of 1912, we find that the legislature has provided that the tax for consolidated schools shall be levied by the board of supervisors in 'the same manner as provided for separate school districts.' If we read the provision for this for separate school districts in the Laws of 1910, chapter 217, there is no doubt but that it is the intent of the legislature that the tax shall be levied and collected regardless of the date upon which the district was created. After providing for the levy and assessment it says: "Provided, however, where separate districts be created after the assessor's roll shall have been completed for the year that the tax collector shall collect said taxes on said district basing same on previous assessment." The assessor does not get the roll until February 1st and it is perfectly manifest that the leg-

islature here says in so many words that this tax shall be collected where the district was formed after February first.   37 Cyc., page 946.

The duties of the Railroad Commission are confined to ·assessing the property.   In the case of *Bridewell* v. *Morton,* 46 Ark. 73-78, and in *Moss* v. *Hinds,* 28 Vt. 279-281, it is held that to assess property is simply to place a value upon it.   To assess taxes is to fix or settle the amount to be levied or raised upon the property. In the case of *Valle* v. *Fargo,* 1 Mo. App. 344, it is said: "Assessed is not synonymous with levied, as used in a lease providing that the lessee shall pay all taxes levied during the term of the lease.   To assess a tax is to declare a tax to be payable.   To levy it is to raise, or collect it.   There is a wide difference between taxes assessed and taxes levied, and no tax can be levied until the assessor's return is made and acted upon by the county court and the book placed in the hands of the collector.   Bouvier says an assessment is the making out of the list of property and fixing its valuation ·or appraisement.   It is also applied to making out a list of persons, embracing their occupations, chiefly with a view of taking such persons and their property.   Jacobs' Law Dictionary, under the title 'Levy' says: The term is used in the law for to collect, or to execute, as to levy money, etc."

In the case of *Western Union Telegraph Co.* v. *Howe,* D. D. A. 180 Fed. 44, it is held that the word assessment means valuation of property by the proper officers, for the purposes of taxation.   In other words, it is the official listing of property for the purpose of constituting a basis upon which taxes are to be levied.   *Sullivan* v. *Bitter* (Tex.), 113 S. W. 193; *Whedon* v. *Lancaster* (Neb.), 107 N. W. 1092; *State* v. *City of Baltimore* (Mo.), 65 Atl. 369.

From all of the above, it will be very clear that the Railroad Commissioners are merely assessors of the

property of the Railroad Companies. That they list and fix the value; and the bill itself charges and if it does not sufficiently charge it, it is presumed, that the roll which was sent down complied with the law. The roll is not made an exhibit to the original bill of complaint, so that we will have to go out of the record to discuss what it actually contained. The only allegation in the original bill is that the Railroad Commission did not assess the tax and did not certify the tax to the board of supervisors. This is the only admission made by our demurrer and we may well admit this charge, since the Railroad Commission, as a matter of law, could not assess the tax and could not certify the tax, if it undertook to do so.

Counsel for the appellants refer the court to the case of *Railroad Company* v. *Vicksburg,* 95 Miss. 699, 49 So. 518. This case does not bear the remotest connection to the case at bar. In that case, the board of mayor and aldermen of the city of Vicksburg, acting under their old charter, refused to collect taxes in accordance with the rolls furnished by the Railroad Commission, but asserted the right independently to adopt their own valuations of the railroad property. And the court held that the authority of the Railroad Commission as appraisers of the railroad property was exclusive, in which view we fully concur. So in this case, when the board of supervisors levied the tax in question, the values of the Railroad Companies' property was listed and fixed by the Railroad Commission, and the board of supervisors in no manner sought to assess that property, and the sheriff now is simply seeking to collect this tax out of the railroad property based on valuations of such property fixed by the said Railroad Commissioners, the railroad assessors for assessing railroad property.

Therefore, in recapitulation, we beg to state: First, that the position of the appellants that the board of su-

pervisors of Hinds county was without authority to levy the tax contested in this case, because the districts were not created until after the first of February, 1914, is unsound. (a)   Chapter 255 of the Laws of 1912, creating the districts and other statutory regulations referred to are mandatory that the tax be levied.   (b) Consolidated school districts are not taxing districts; they levy no taxes. (c)  The property included in these consolidated school districts was in the first district of Hinds county, Mississipi, on February 1, 1914.   (d) This is not a case of a municipality seeking to levy a tax on property beyond its confines.  (e)   These con-solidated school districts are mere governmental agencies of the county of Hinds, for carrying out its educational purposes.  (f)  If appellants' position in this respect is true, then the board of supervisors could levy no taxes except for liability accrued by February 1st. (g)   See the case of *Railroad Company* v. *School District,* 75 Kan. 843, 89 Pac. 1015, directly in point.

Second, in regard to the contention of the appellant that the Railroad Commission has not assessed the tax, we state: (a)   State Railroad Commissioners are assessors of state railroad property, and have nothing to do with the assessment of taxes.  (b)   The original bill of complaint shows, with the presumptions arising therefrom, that the Railroad Commission made out its role and forwarded the same, in accordance with Law.

(c)   There is no allegation in the bill of complaint as to what the assessment furnished by the Railroad Commission contained.   It is presumed that it contained everything that it should contain, but it should not contain any assessment of the taxes or any certificate of the taxes.

(d)   There is no allegation in the original bill of complaint that the roll furnished by the Railroad Commission to the board of supervisors did not distinguish the property situated in the consolidated school dis-

tricts. That, however, is immaterial, since the requirement is only for the convenience of the tax collector in order that he may collect the proper tax; and there is no dispute about the fact that, acting on the roll furnished by the Railroad Commission, he is demanding the proper tax.

(e) This question, however, is not the underlying question, since the Railroad Commission could at any time send down a description of the property located in the consolidated school districts, if it should appear that has not been done. And for that reason, counsel on both sides requested the court below and renew their request here, as we understand it, that the court decide the underlying question as to the liability for the taxes for the year 1914, on account of the consolidated school districts not having been organized by the first of February.

SMITH, C. J., delivered the opinion of the court.

The bill alleges that, "In July, 1914, the school board of Hinds county met in pursuance of section 4512, Code of 1906, and fixed and defined the boundaries, limits, and territory of the Forest Hill Consolidated School District in the county of Hinds; and also of the Byram Consolidated School District;" that at its September, 1914, meeting the board of supervisors of Hinds county issued bonds of these districts to the amount of one thousand and eight hundred dollars in accordance with the statute, and also levied a tax of five mills on the "assessable property" situated in the Forest Hill District, and of four and one-half mills on the "assessable property" situated within the Byram District; that complainant owns property in both of these districts, but that this property has not been assessed by the railroad commissioners for the year 1914, and prayed that the sheriff of Hinds county be enjoined "from in any way

109 Miss.—14

attempting to collect from your complainants the tax claimed by him to be due on account of taxes assessed against the property of your complainants in the Forest Hill and Byram separate districts for the current year of 1914.'' The demurrer was interposed to this bill was sustained, and the cause dismissed. The first ground upon which it is sought to obtain à reversal of this decree is that the board of supervisors of Hinds county was without power, under sections 4255 and 4257 of the Code, to levy the tax in question, for the rea- son that these districts were created after the 1st day of February of the year in which the tax was levied. Section 4257 of the Code provides:

''All taxable property brought into the state or ac- quired or held by any person before the first day of February shall be assessed, and taxes thereon paid for the current year.''

And section 4255 thereof provides:

''All taxes assessed shall be a lien upon and bind the property assessed, from the first day of February of the year in which the assessment shall be made.''

Appellant's contention in effect is that, under these sections, in order for property within the consolidated school district to become liable to a tax for district school purposes, it must have been in the district on the 1st day of February of the year in which the tax is sought to be collected, and since these districts were not in existence on the 1st day of February, 1914, its property was not and could not have been then in them. The case relied upon to support this contention is *Gulf-port* v. *Todd*, 92 Miss. 429, 46 So. 541. In that case is was held that a municipality was without power under these statutes to collect taxes upon property in terri- tory added to it after the 1st day of February of the year in which the taxes are sought to be collected. The case at bar, however, may be differentiated from that case; for, as pointed out in the opinion therein, that case presented--

"no question of governmental agency, . . . but simply the question of the power of a subordinate creation of the state to tax for its *general revenue purposes* (italics ours) without reference to the day fixed by the laws of the state."

We are not here concerned with the soundness of the view that a municipality is not a governmental agency, for there can be no question but that county boards of supervisors and public school boards are nothing more nor less than agencies created by the state to enable it to conveniently discharge a governmental function, so that that case has no application here. In so far as the question here under consideration is concerned, counties and public school districts simply designate the territory or subdivisions of the state within which the two boards discharge the duties which the state has delegated to them. By section 307 of the Code it is provided that boards of supervisors—

"shall have power to levy such taxes as may be necessary to meet the demands of their respective counties, upon such persons and property as are subject to state taxes for the time being."

The property within this district comes not only within the spirit, but also within the strict letter, of this statute, for it "was subject to state taxes for the time being."

If appellant's construction of these statutes is correct, it will necessarily follow that no taxes could have been collected in most of the new counties organized during the past several years during the year of their organization, for most of them were organized after the 1st day of February, and the statutes providing for their organization made no special provision for the levy and collection of taxes. A county organized in April of one year could not, under this construction of the statute, collect any taxes, in the absence of special legislation, until October of the following year. The

same result would follow the creation of road districts under the various statutes providing therefor. Both the executive and the administrative departments of the state have heretofore acted upon the construction of these statutes (sections 4255 and 4257), which permits taxes to be collected by new counties and for road and school districts during the year of their creation, although they were created after February 1st, and such construction should not now be departed from unless manifestly incorrect.

Moreover, if no taxes could be collected for the support of a consolidated school district during the year in which it was organized, an absurd situation would be created, as instanced in the case at bar; for while these districts were organized in July, 1914, no taxes could be collected for the support of their schools and for the payment of their bonds until October, 1915. That the legislature intended to bring about such a condition of affairs is almost unthinkable. Consequently the statutes should not be construed as so to do if it is reasonably possible to construe them otherwise; one of the cardinal rules of construing statutes being that if reasonably possible they should be so construed as not to be absurd. *Kennington* v. *Hemingway,* 101 Miss. 259, 57 So. 809, 39 L. R. A. (N. S.) 541, Ann. Cas. 1914B, 392. In an opinion rendered by the court below it was said that:

"By reference to section 3, chapter 255, Acts of 1912, we find that the legislature has provided that the tax for consolidated school districts shall be levied by the board of supervisors in 'the same manner as provided for separate school districts.' If we read the provision for this for separate school districts in Laws of 1910, chapter 217, there is no doubt but that it is the intent of the legislature that the tax shall be levied and collected regardless of the date upon which the district was created. After providing for the levy and assess-

ment it says: 'Provided however, where separate districts be created after the assessor's roll shall have been completed for the year, that the tax collector shall collect said taxes on said district, basing same on previous assessment.' The assessor does not get the roll until February 1st, and has until the first Monday in July in which to file same, and it is perfectly manifest that the legislature here says in so many words that this tax shall be collected where the district was formed after February 1st."

The force of the reason here assigned for holding appellant's property liable to the taxes here in question is strengthened when we remember that personal property owned by all taxpayers and the land owned by corporations under the supervision of the Railroad Commission is assessed each year. These views are supported by *Atchison, etc.,* v. *School District,* 75 Kan. 843, 89 Pac. 1018.

The second reason assigned for the reversal of the decree of the court below is that appellant's property situated within these districts has not been assessed by the Railroad Commission, and that until this is done appellant is not liable for taxes thereon. While the allegations of the bill in this connection are somewhat vague, what we understand the pleader to have meant to charge is that the Railroad Commission, in assessing this property, did not indicate on the assessment roll what portion thereof is situated within these school districts. The bill does not allege when the assessment was made, nor that it was impracticable for it to have been made on or before June 1st, so that, construing it most strongly against the pleader, we must presume that the Railroad Commission complied with section 4387 of the Code and made the assessment on or before June 1st, and therefore before these consolidated districts were created. If this be true, it was impossible for it to indicate on the rolls what property was situated within the districts. Nevertheless, under chapter 217,

Laws 1910, it is the tax collector's duty to collect all taxes levied thereon for district purposes, "basing·same on the assessment previously made;" that is, the assessment made next preceding the creation of the districts. That it may, in some instances, be somewhat difficult for a tax collector to ascertain what portion of the property assessed lies within a school district when not so indicated on the assessment roll does not relieve him from the duty of collecting the taxes thereon so far as it is practicable for him to do so; his duty in this connection being the same whether the property sought to be taxed is that ·of a railroad company or of any other taxpayer. Our statutes formerly contained no provision requiring the property in school districts to be indicated on the assessment rolls, either those made by the regular assessors or by the Railroad Commission, so that appellant is in no worse situation here than were the taxpayers· whose property was within separate school districts during the time that such property was not required to be indicated on the rolls. The first statute requiring this to be done was chapter 77, Laws 1900, and related only to property assessed by the Railroad Commission; and the first statute which required· this to be done by the regular assessors with reference to all property, was chapter 213, Laws 1910.

Since the bill contains no allegation that the tax collector is seeking to collect taxes on ·property not within these districts, or that the amount claimed is incorrect, it follows from the foregoing views that the decree of court below must be, and is, affirmed.

*Affirmed.*

COOK, J. (dissenting).

As I read the pleadings in this case, it appears that the property involved has not been assessed for the taxes which the tax collector will proceed to collect. By section 4384, Code 1906, "the members of the

Railroad Commission are constituted state railroad assessors.'' Section 4387 of the Code provides how the assessment roll shall be made out. From the pleadings it appears that no assessment roll ·of the railroad property in this school district has ever been made. It is easy enough to decide this case in accordance with what the court may deem to be the rule of justice in the particular case but for the fact that the legislative department has seen fit to provide· how and by whom railroad property shall be assessed. The legislative scheme is exclusive of all other schemes. The statute does provide that the collector may assess and collect taxes on all property left unassessed by the assessor. Section 4320, Code 1906. This section forms a part of the chapter on Revenue, and I do not think that it can be contended, nor do I understand the court contends, that this section has any application to railroad property.

I have been unable to find any act of the legislature giving this power to the collector in cases where railroad property has been left unassessed by the Railroad Commission. This may be an intentional omission, or it may be an oversight, but it is nevertheless a fact that the collector has not been so empowered, and it will not be contended that he possesses any inherent power in the premises.

I would regard the judgment of the court as excellent and much to be desired legislation, but I cannot bring myself to believe that any warrant for the court's interpretation of the law can be found in the statutory law of the state, where it must be found if it exists at all.

As I see it, the situation is just this: The railroad assessors have not assessed the property; the tax collector, finding himself without an assessment roll made up in the manner pointed out by the statute, has proceeded to make the assessment himself, in the absence

of any authority so to do. He will collect the taxes unless restrained by the courts. The court declines to intervene, because education is important, and because education will be hampered for a while longer, unless the taxes are collected. This may be good policy, but, in my opinion, it is bad law.

The quotation from chapter 217, Laws 1910, which requires the tax collector to collect all taxes levied on property in the district "basing same on the assessment previously made," cannot serve to justify the tax collector in his purpose to collect the taxes involved in this case. There is no "assessment previously made" in this district, and, of course, he cannot base his collection on the nonexistent. The legislature, wisely or unwisely, has imposed the duty and conferred the power on the Railroad Commission alone to make the assessment, and, as I understand the powers of this court, we are without legal power to improve on, relax, or substitute some other and more convenient way to make the assessment.

I fully realize my own limitations, and have the greatest respect for the judgment of my Associates, but, in this case, I must respectfully dissent from the views expressed in the majority opinion.