MORGAN et al. v. WOOD, TAX COLLECTOR, et al.

(Division A. May 18, 1925. Suggestion of Error Overruled Jan. 4,
1926.)

[106 So. 435. No. 24973.]

1. SCHOOLS AND SCHOOL DISTRICTS. *Legality of organization not sub-*
   *ject to collateral attack in proceeding to enjoin collection of tax.*
   Legality of organization of district cannot be attacked collaterally
   in proceeding to enjoin collection of special school tax levied on
   property in district.

2. SCHOOLS AND SCHOOL DISTRICTS. *Consolidated district tax, levied*
   *without separate assessment of property in district, void, and*
   *collection enjoined.*
   Consolidated district tax, levied without separate assessment of
   property in district by tax assessor, as required by Laws 1916,
   chapter 180, section 3, as amended by Laws 1920, chapter 170, re-
   enacted in Laws 1924, chapter 283, section 104, is void, and col-
   lection thereof will be enjoined under Code 1906, section. 533,
   Hemingway's Code, section 290.

APPEAL from chancery court of Wilkinson county.
HON. R. W. CUTRER, Chancellor.

Injunction by W. H. Morgan and others against H. A.
Wood, Tax Collector, and others. Decree of dismissal,
and complainants appeal. Reversed and remanded.

*Ackland H. Jones,* for appellants.

I.   In sustaining these demurrers, the Chancellor an-
nounced, orally, that it appeared that this bill was merely
a collateral attack on the orders in question, and for that
reason, with others stated by him, he held that the de-
murrers were well founded and should be sustained.

That the bill is not a collateral attack is quite plain
from its language, and from the law controlling in such
cases.   The distinction between a collateral attack and a
direct attack is fully set out in *McKinney* v. *Adams,* 95
Miss. 832, 50 So. 474.   It is there held that a direct attack

on a judgment is an attempt to amend, correct, reform, vacate, or enjoin the execution of the same, in a proceeding instituted for that purpose, such as a motion for a rehearing, an appeal, some form of writ of error, a bill of review, an injunction to restrain its execution, etc., while a collateral attack is an attempt to avoid its binding force in a proceeding not instituted for such purposes. The case at bar is a direct attack, as is clearly shown by the bill and its prayer.

The charge is made in the bill that the county school board attempted to create the Glenwild consolidated school district by the consolidation of the Glenwild school, the Mount Pleasant school and the West school and that the said district as defined and delimited in the said order contains and embraces the Centreville district, the Forest Home district, and the White school district, and that the inclusion of this additional territory, being districts and parts of districts not embraced in the boundaries of the three schools ordered to be consolidated, to-wit, Glenwild, Mount Pleasant and West, was foreign to the order and was a departure from the order, and without any resolution or order of the county school board to that effect. This is an allegation of a material fact, and this is admitted by the demurrer.

The inclusion of this territory, being the territory of school districts other than the three directed to be consolidated, was, in law, a fraud on these complainants. It is not questioned here that the county school board had the authority to consolidate all these public school districts into one, but it is contended, and the record shows this to be the fact, that while the order consolidates three named public schools into one district, the limits of that district embrace three other school districts. In fact, as charged by the bill and admitted by the demurrer, while three schools are directed to be consolidated, *six* were in fact so embraced, and attempted to be consolidated. This, I repeat, was a legal fraud on the complainants, and on all residents and taxpayers in that

part of the attempted consolidated district outside of the limits of the three schools actually ordered to be consolidated.

County school boards are limited in their activities, and in their jurisdiction; no presumption is indulged as to the verity of their action, but all jurisdictional prerequisites must appear in the record.

The bill here directly charges: "Further, that the said order and resolution so adopted, and so certified by the superintendent of education of the said county, does not show and fails to show that the said county school board approved any levy of any taxes for any time on any part, or all, of the said alleged district."

This is a direct charge, admitted by the demurrers.

Chapter 170, Laws of 1920, provides that on the petition of a majority of the electors of any qualified school district, *and the approval* of the county school board, the board of supervisors may make a levy for these school purposes. It has been held by this court in *Board of Supervisors, etc.,* v. *Walker,* 126 Miss. 595, 89 So. 260, that the principal purpose, if not the sole purpose, of the requirement for the approval of the county school board is to confer on the county school board the power to pass upon the wisdom and necessity for the school levy. To the county school board is committed that duty, and its decision can be evidenced solely by the action taken by it and reflected in its minutes.

The record shows that there was no approval of this levy of taxes by the county school board. Without the certificate from the county school board that it had, on a petition presented for that purpose, approved the proposed levy of taxes, without the record of that school board so showing that jurisdictional fact, the Board of Supervisors had no jurisdiction whatever to adopt this order and to make this levy.

The bill directly calls all of this before the court; the demurrers admit the truth of the allegations, and yet it is held that these demurrers should be sustained.

II. Again, take up the question of the assessment of the property in this district. The law authorizing the consolidation of these schools and the levy of these taxes, requires a separate assessment to be made by the county assessor. The order of the board of supervisors quoted above does not direct an assessment to be made separately of the property in this district; it says that an assessment for the current year had been completed, but it does not require the assessor to make a separate one for the district, does not require the tax collector to make his collections from the roll completed for that year, but directs him to base his collections on *previous assessments*.

Just which one of the previous assessments the tax collector should decide to use is, of course, left in his discretion. Without a legal assessment there can be no legal collection of taxes. There has been no assessment here, no legal assessment at all, and the attempt of the collector to enforce payment from these complainants is wholly illegal and should be restrained.

*P. M. Stockett,* for appellees.

I. Surely this court would not declare null and void the solemn acts and findings of the county school board in creating the school district, and the acts and findings of the board of supervisors in levying the tax in this case, when neither the board of supervisors nor the county school board are *brought into court,* not even the invitation or opportunity being extended to them to come in and defend their actions. Had they been in court their acts and findings must have been attacked by a direct appeal, and cannot now be attacked in a collateral suit like the one here to restrain the collection of a tax, as has been forever settled and decided by *Dye* v. *Mayor of Sardis,* 119 Miss. 359; *Liddell* v. *Noxapater,* 129 Miss. 513; *Borroum* v. *Purdy Road District,* 131 Miss. 778.

II. The bill shows on its face that the tax levy and school district are proper and legal in every respect. The

bill attacks the findings and acts of the school board and the board of supervisors, and they are not allowed to come in and defend their acts. The prayer of the bill does not seek relief against the trustees, but asks that orders and acts done and performed by other parties not made defendants be declared null and void. The bill also shows on its face that instead of following the plain course laid down by the law and taking a direct appeal from the county school board, and the board of supervisors, as appellants should have done, they made no objections, laid down on their rights, and at this late date attempt to come into court armed with a strong writ of injunction, and destroy this school. This they cannot do. _Anderson_ v. _Ingersoll_, 62 Miss. 73.

III. _Complainants cannot collaterally attack the proceedings of the county school board, and the board of supervisors._

This is a collateral attack pure and simple. In so far as the acts and findings of the county school board and the board of supervisors are concerned, they are being here attacked collaterally without making even these boards parties defendant. A direct appeal should have been taken. _Dye_ v. _Mayor of Sardis_, 119 Miss. 359; _Hinton_ v. _Perry County_, 84 Miss. 536; _Liddell_ v. _Noxapater_, 129 Miss. 513; _Borroum_ v. _Purdy Road District_, 131 Miss. 778.

The appellants should have taken advantage of section 61, Hemingway's Code, had they been aggrieved by these orders, and taken direct appeals therefrom. But they wait until after the trustees are appointed, until time for the school to begin, and then reach out and jerk these trustees into chancery court, and flash a strong writ of injunction in the tax collector's face.

IV. They charge that it is not legal to levy this tax and require the tax collector to proceed to collect the same, basing it on previous assessment. The case of _Illinois Central Railroad_ v. _Middleton_, 109 Miss. 199, dis-

poses of this objection in the bill, and settles the precise question in favor of appellees.

COOK, J., delivered the opinion of the court.

The appellants filed a bill of complaint in the chancery court of Wilkinson county against the tax collector of Wilkinson county and the board of trustees of the Glenwild consolidated school district, seeking to enjoin the collection of a special levy of taxes on the property of the district, and from a decree sustaining demurrers to the bill, dissolving the preliminary injunction and dismissing the bill, this appeal was prosecuted.

The bill of complaint attacked the validity of the order of the county school board creating the Glenwild consolidated school district, as well as the order of the board of supervisors levying the special tax of three mills, and charges that the said tax collector is attempting to collect this tax on the lands and property of the complainants illegally, oppressively, and without any due and legal authority, and unless restrained will proceed to sell the property of the complainants to enforce the payment of the said illegal and unauthorized tax. The bill further charges that there has been no separate assessment made of the property of the district; that the order of the board of supervisors levying the said special tax of three mills requires the tax collector to "collect the tax on said district, basing the same on previous assessments," without specifying which assessment. There are numerous other charges involving the validity of the orders and acts of the county school board, the intentions or purposes of the school authorities as to school buildings, and the disposition of the funds to be derived from the proposed levy of taxes, but, for the purpose of this opinion, these charges are not material.

In so far as the validity of the orders of the county school board establishing the school district are concerned, this bill to enjoin the collection of this special levy of taxes is a collateral attack, and the legality of the

organization of the district cannot be inquired into or attacked collaterally in a proceeding to enjoin the collection of a special school tax levied on the property in the district. *Dye* v. *Mayor of Sardis,* 119 Miss. 359, 80 So. 761; *Liddell* v. *Noxapater,* 129 Miss. 513, 92 So. 631; *Borroum* v. *Purdy Road District,* 131 Miss. 778, 95 So. 677.

The order of the board of supervisors levying the proposed tax on the property of the school district recites all the jurisdictional facts necessary to the validity of the levy, but this order further recites: "That the said district has been created after the assessor's rolls have been completed for the year. It is ordered by the board of supervisors that an annual tax levy of three mills be and the same is levied on all property of said district, and that the tax collector for the current year shall collect the tax on said district, basing the same on previous assessments."

The bill of complaint charges and the demurrer admits that no special assessment of the property of the district has been made, as required by chapter 170, Laws of 1920, as re-enacted in section 104, chapter 283, Laws of 1924.

Chapter 170, Laws of 1920, amending section 3, chapter 180, Laws of 1916, provides that, on a petition of a majority of the qualified electors of a consolidated school district containing not less than ten square miles, and on the approval of the county school board, the board of supervisors shall, in the same manner as provided for separate school districts, annually levy a tax on the property of the district, etc. After providing for the levy of this tax, the section further provides that: "The tax assessor shall make a separate assessment of the property of such district, and the county tax collector shall collect the taxes required each year of such districts, as other taxes are collected, and deposit the same with the county treasurer to the credit of the district for which it was levied."

The bill of complaint charges, and the order of the board of supervisors affirmatively shows, that no separate assessment of the property of the district was made after the creation of the district. On the contrary, the order requires the tax collector to collect the tax based upon previous assessments. This order was passed at the November, 1923, meeting of the board of supervisors, and presumably it was intended that the levy should be based upon the 1923 general county assessment of the land and property in the district, but it does not specifically so provide, and, with only the general county assessment as a guide, it would be difficult, if not impossible, to determine with any degree of certainty the lands which are embraced within the boundaries of the district. The necessity for this separate assessment is illustrated by an examination of the boundary lines of the district here involved. This boundary line follows the meanderings of several highways and creeks, without reference to the governmental subdivisions of the land. With this boundary line following a devious course through and across the various governmental subdivisions, the collection of a tax on the land within the district involves, not only the ascertainment of the parts of the boundary subdivisions which are within the district, but the value thereof. This is a duty resting upon the assessing authorities, and not upon the tax collector. The provisions of the statute require that this separate assessment shall be made, and the special levy collected thereon, and any attempt to collect the tax otherwise is without authority of law. Section 533, Code of 1906 (section 290, Hemingway's Code), confers on the chancery courts jurisdiction to restrain the collection of any taxes levied or attempted to be collected without authority of law. We are therefore of the opinion that the demurrers should have been overruled, and the decree of the court below will be reversed, the demurrers overruled, and the cause remanded.

*Reversed and remanded.*

ON SUGGESTION OF ERROR.

On a former day an opinion was rendered in this cause, in which it was held that the separate assessment of the property within a consolidated school district, which is required by chapter 170, Laws of 1920, is a necessary prerequisite to the collection of a tax levied on the property of the district for the various purposes therein enumerated.

A suggestion of error has been filed, in which it is earnestly contended that this view is in conflict with the holding of the court in the case of *Illinois Central Railroad Co.* v. *Middleton,* 109 Miss. 199, 68 So. 146, and that the doctrine announced in the Middleton case is controlling in the case at bar.

At the time the Middleton case was decided, section 3 of chapter 255 of the Laws of 1912 was the law regulating the levy and collection of special taxes on the property of consolidated school districts, and, while this section provided that, upon a proper petition, the board of supervisors should annually levy such a tax, in the same manner as provided for separate school districts, and that the tax collector should collect the tax as other taxes are collected, it contained no provision or requirement that a separate assessment of the property of such district be made, and in construing this section of the said chapter 255, Laws of 1912, in connection with chapter 217, Laws of 1910, which provided that, "where separate school districts be created after the assessor's rolls shall have been completed for the year, the tax collector . . . shall collect the taxes on said district, basing same on previous assessment," it was held in the Middleton case that it was the intention of the legislature, where a consolidated school district was created after the assessor had completed the roll, that the tax collector should collect the taxes levied for district purposes, basing the same upon the assessment made next preceding the creation of the district.

140 Miss.—10.

The Middleton case was decided at the March, 1915, term of the court, and at the next succeeding session of the legislature section 3, chapter 255, Laws of 1912, was amended by adding the provision that "the tax assessor shall make a separate assessment of the property of such district," and the section as amended contains no proviso that, in any event, the taxes may be based upon a previous assessment. This amendment appears in section 3, chapter 180, Laws of 1916, and this section, in so far as it deals with the assessment of property and the collection of the tax, is identical with chapter 170, Laws of 1920. The Middleton case pointed out certain practical difficulties of administration which might arise under the statutes as then existing and therein construed, and with this before it the legislature inserted this amendment in the statute dealing with consolidated school districts, and omitted the proviso found in chapter 217, Laws of 1910. The language of this section of the consolidated school district statute, which provides for both the assessment and collection of taxes on the property of the district is clear and mandatory in form, and we assume that the legislature had some purpose in requiring a separate assessment of the property of such a district, and omitting any authority to collect such a tax on any assessment other than such separate assessment. We recognize that under some circumstances an undesirable condition may result from this construction of the statute, as pointed out by counsel for the appellees, and the construction contended for by him would probably be very desirable legislation, but that is a matter which is addressed to the sound discretion of the legislative department.

The suggestion of error will therefore be overruled.

*Overruled.*